# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CBS OUTDOOR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 4317 |
| v. | ) | |
| | ) | Chief Judge Rubén Castillo |
| VILLAGE OF PLAINFIELD, ILLINOIS, | ) | |
| and RED RIVER PLAINFIELD, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff CBS Outdoor, Inc. ("CBS") brings this action against Defendants Village of Plainfield, Illinois (the "Village") and Red River Plainfield, LLC ("Red River") alleging violations of CBS's constitutional rights to due process, equal protection of the law, and freedom of speech. Presently before the Court is the Village's motion to dismiss the complaint for failure to state a claim upon which relief may be granted. For the reasons set forth below, the Village's motion is granted.

### RELEVANT FACTS

CBS, a Delaware corporation, is in the outdoor advertising business and owns or leases property on which it maintains outdoor advertising structures. (R. 1, Compl. ¶¶ 12-13.) It sells or donates its advertising space to third parties, or uses it itself, to communicate commercial and non-commercial messages to the public. (*Id.* ¶ 13.) The Village is an Illinois municipal corporation located in Will and Kendall Counties. (*Id.* ¶ 14.) Red River is an Illinois limited liability company with its principal place of business in Naperville, Illinois. (*Id.* ¶ 15.) Masud M. Arjmand, a resident of Naperville, Illinois, is the sole member of Red River. (*Id.*)

CBS owns and maintains a billboard that is the subject of this suit (the "Sign"). (*Id.* ¶ 5.) The Sign is a single pylon that is anchored in concrete approximately 20 feet below ground. (*Id.* ¶ 20.) It has two back-to-back faces, 14 feet high and 68 feet wide, that are visible from Illinois State Route 59. (*Id.*) The top of the Sign is approximately 64 feet above the ground. (*Id.*) The Sign is located on a parcel of land (the "Property") that is owned by Red River and leased to CBS through a written agreement (the "Lease"). (*Id.* ¶ 5; R. 1, Ex. 1, Lease.) The Property is adjacent to another parcel of property (the "McDonald's Site") that is also owned by Red River. (R. 1, Compl. ¶ 15.)

Although not an original party to the Lease, CBS came to be the successor lessee of the Property and owner of the Sign through a series of transactions and mergers. (*Id.* ¶¶ 25-26.) Red River is similarly a successor lessor of the Property rather than an original party to the Lease. (*Id.* ¶ 27.) The Lease states that it commenced on August 8, 1991, and continued for

> an initial term of ten years from the first day of the first month following erection of the advertising display(s) (hereinafter called "the effective date"), and shall continue thereafter, at the option of the Lessee, for a second term of ten years, and thereafter from year to year, on the same terms, until terminated as of any subsequent anniversary of the effective date by written notice of termination given not less than sixty days prior to such anniversary date by either the Lessor or Lessee.

(R. 1, Ex. 1, Lease ¶ 3.) In September 1991, Will County issued a building permit for the Sign. (R. 1, Compl. ¶ 17; R. 1, Ex. 3, Permit.) On April 21, 1991, Illinois issued a state permit for the Sign. (R. 1, Compl. ¶ 18; R. 1, Ex. 4, Permit.) CBS alleges that construction of the Sign was completed in October 1992, but the parties agreed that the initial term of the Lease began on September 1, 1992, and expired on August 31, 2002. (R. 1, Compl. ¶ 19.) At that point, the lessee at the time, CBS's predecessor in interest, exercised its option to renew the Lease for a second ten-year term, which expired on August 31, 2012. (*Id.*) On March 28, 2012, Red River

and CBS executed an Addendum to the Lease (the "Addendum") that extended CBS's right to possession of the Property for a term of twenty years. (*Id.* ¶ 28; R. 1, Ex. 5, Addendum.) The Addendum was backdated to September 1, 2011, and the term of the Addendum ran through August 31, 2031. (R. 1, Compl. ¶ 28; R. 1, Ex. 5, Addendum.)

On August 31, 1998, the Village annexed the Property and the McDonald's Site at the request of the owner of those properties—Red River's predecessor in interest. (R. 1, Compl. ¶ 34.) On October 18, 2004, the Village enacted Ordinance 2428 (the "2004 Sign Code"), a comprehensive regulation of signs in the Village. (*Id.* ¶ 35; R. 1, Ex. 6, Portions of 2004 Sign Code). The 2004 Sign Code was amended and recodified on August 15, 2006 as Ordinance 2578 (the "2006 Sign Code").[1] (R. 1, Compl. ¶ 36; R. 1, Ex. 7, 2006 Sign Code.) As relevant here, the 2006 Sign Code states that "[b]illboards or other similar large outdoor advertising devices" are "expressly prohibited." (R. 1, Ex. 7, 2006 Sign Code § 9-95(3).) CBS alleges that the Property was zoned such that the Sign was legal when it was constructed, that it was constructed and maintained in accordance with applicable building codes, and that it has never been cited for a code violation. (R. 1, Compl. ¶ 24.)

In 2005, McDonald's USA, LLC ("McDonald's") approached the Village to propose developing the McDonald's Site as a typical McDonald's restaurant with a drive-through window. (*Id.* ¶ 37.) On April 17, 2006, the Village enacted Ordinance 2548, which granted the special use permit McDonald's needed to develop its proposed restaurant at the McDonald's

---

[1] CBS does not challenge the constitutionality of either Sign Code. (*See* R. 1, Compl., ¶¶ 55-66.) The Court references the 2006 Sign Code, however, because it provides the regulatory backdrop for the ordinance CBS challenges, Ordinance 2548. *See Nolan v. City of Granite City*, 514 N.E.2d 1196, 1199 (Ill. App. Ct. 5th Dist. 1987) ("[O]rdinances should be interpreted consistently with one another as part of a coherent system of legislation and those ordinances relating to the same subject matter should be construed harmoniously where possible, giving meaning to each.")

3

Site. (*Id.* ¶ 39; R. 1, Ex. 2, Ord. 2548.) Ordinance 2548 granted the permit subject to two conditions: (1) the execution of a statement of intent; and (2) "Removal of the [Sign], when the current lease expires in 2011, or sooner if possible" (the "Removal Provision"). (R. 1, Ex. 2, Ord. 2548 at § 3.) On August 3, 2006, McDonald's, the Village, and the owner of the property (Red River's predecessor in interest) fulfilled the first condition of Ordinance 2548 by signing the Planned Unit Development Commercial and Industrial Statement of Intent and Agreement (the "PUD Statement"). (R. 1, Compl. ¶ 41.) The PUD Statement provides, *inter alia*, that the Lease "shall not be renewed or extended" by the owner or any successor, and "[u]pon the expiration of the [Lease] in 2011, or upon the earlier termination of the [Lease] to the extent legally permitted," the Sign would promptly be removed. (*Id.* ¶ 42; R. 1, Ex. 8, PUD Statement ¶ 3.) CBS was not notified of the enactment of Ordinance 2548 or of the signing of the PUD Statement. (R. 1, Compl. ¶¶ 39, 41.) CBS alleges that when Red River obtained title to the Property and the McDonald's Site in November 2007, it did not have actual notice or knowledge of the Removal Provision contained in Ordinance 2548. (*Id.* ¶ 27.)

On April 30, 2012, an officer of the Village wrote to Red River that the Property was in violation of Section 9-95(3) of the 2006 Sign Code and the PUD Agreement. (*Id.* ¶ 45; R. 1, Ex. 9, Apr. 30, 2012 Letter to Red River.) The letter instructed that the Sign should be removed by May 30, 2012, and that failure to remove the Sign would result in a fine of up to $750 per day and possible prosecution. (R. 1, Compl. ¶ 45; R. 1, Ex. 9, Apr. 30, 2012 Letter to Red River.)

## PROCEDURAL HISTORY

On June 4, 2012, CBS filed its complaint against Red River and the Village. (R. 1, Compl.) In Count I, CBS brings three claims of constitutional violations pursuant to 42 U.S.C. §§ 1983 and 1988. CBS alleges that the Removal Provision of Ordinance 2548 constitutes a

deprivation of substantive due process, (*id.* ¶ 57); a deprivation of equal protection of the law, (*id.* ¶ 58); and a deprivation of CBS's freedom of speech (*id.* ¶ 59). CBS prays for relief in the form of a permanent injunction barring the Village from enforcing the Removal Provision. (*Id.* ¶ 61.) In Count II, CBS seeks a declaratory judgment that the Removal Provision is invalid and unenforceable under Illinois State law. (*Id.* ¶¶ 62-66.) CBS also seeks a preliminary injunction prohibiting enforcement *pendente lite.* (*Id.* ¶¶ 46-53).

On August 31, 2012, the Village moved to dismiss CBS's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 12, Def.'s Mot.) The Village argues that CBS's claims are barred by the applicable statutes of limitations, (R. 14, Def.'s Mem. at 5-6); that CBS has not shown a likelihood of success on the merits sufficient to justify a preliminary injunction, (*id.* at 6-7); that CBS does not have a legally cognizable or constitutionally protected interest in the property at issue such that the requested relief may be granted, (*id.* at 7-9); that the Addendum was illegal and void, (*id.* at 9-10); that CBS's request for a declaratory judgment should be denied, (*id.* at 11-13); and that CBS fails to allege facts sufficient to sustain its First Amendment, equal protection, and substantive due process claims, (*id.* at 13-15). That motion is presently before the Court.

## LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Reger Dev. LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Pursuant to Rule 8(a)(2),

a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rule 8(a)(2) requires more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Detailed factual allegations" are not required, but the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

A statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c)(1). Dismissing a claim as untimely at the pleading stage is an "unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). "[A] federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). But, a claim may be dismissed as untimely at the motion to dismiss stage if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

## ANALYSIS

### I. Whether CBS's Section 1983 claims are barred by the statute of limitations

As an initial matter, the Village argues that Count I of the complaint is barred by the applicable statute of limitations. Specifically, the Village argues that CBS's Section 1983 claims

challenging the validity of Ordinance 2548 are subject to a two-year statute of limitations, which began to run when Ordinance 2548 was enacted on April 17, 2006. (R. 14, Def.'s Mem. at 5-6.) CBS does not dispute that its Section 1983 claims are subject to a two-year limitation period. (*See* R. 18, Pl.'s Resp. at 2.) Instead, CBS argues that the two-year limitations period does not apply for four reasons: (1) because the enforcement, not the enactment, of the Ordinance is the injury and therefore the cause of action did not accrue until April 2012; (2) because the discovery rule tolls the statute of limitations until April 2012; (3) because the doctrine of equitable tolling applies; and (4) because the deprivation of speech is an on-going violation such that there is no statute of limitations. (*Id.* at 2-4).

### A.    Accrual of CBS's Section 1983 claims

Although Section 1983 provides a federal cause of action, it does not contain a statute of limitations. 42 U.S.C. § 1983. Courts look to the personal injury laws of the state in which the injury occurred to determine the length of the statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Kelly v. City of Chi.*, 4 F.3d 509, 511 (7th Cir. 1993). Illinois has a two-year statute of limitations for personal injury claims. 735 Ill. Comp. Stat. 5/13-202. Thus, Section 1983 claims arising in Illinois are governed by a two-year statute of limitations. *Kelly*, 4 F.3d at 511.

While state law sets the length of the statute of limitations period, federal law governs the date of accrual for a Section 1983 action. *Wallace*, 549 U.S. at 388. A Section 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Kelly*, 4 F.3d at 511 (quoting *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992)). Determining the accrual date of a Section 1983 claim "proceeds in two steps. First, a court must identify the injury. Next, it must determine the date on which the plaintiff could have sued for

that injury. That date should coincide with the date the plaintiff 'knows or should know' that her rights were violated." *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004) (citing *Kelly*, 4 F.3d at 511) (internal citations omitted).

Here, the injury complained of is clearly the enactment of Ordinance 2548. (*See, e.g.*, R. 1, Compl. ¶ 56) ("The Village . . . wrongfully promoted and enacted the Removal Provision as a part of Ord[inance] 2548 and now threatens to enforce said Provision . . ."). Although CBS makes a brief attempt to contend that the injury is the Village's recent attempt at enforcement, the complaint requests that the Court find that "the Removal Provision is invalid on its face and unenforceable." (*Id.* ¶ 66A.) Thus, CBS complains that Ordinance 2548 itself, not its enforcement, is unconstitutional. Under this theory, the injury is the enactment of the Removal Provision. *See Hileman*, 367 F.3d at 699 ("In *Kelly*, the Commission's vote to revoke plaintiffs' liquor license made enforcement relatively certain. Indeed, the Commission's decision had binding legal effect upon its passage, even though the City chose to postpone enforcement.").

On April 17, 2006, Ordinance 2548 was enacted. (R. 1, Compl. ¶ 39.) It was on that date that CBS could have sued based on the injury, and it was on that date that CBS should have known that the alleged violation of its rights occurred. *See Universal Outdoor, Inc. v. Elk Grove Vill.*, 969 F. Supp. 1125, 1128 (N.D. Ill. 1997) ("When as here a legislative enactment is firmly in place, no one can claim justifiable reliance on the speculative possibility that there might be future changes."). As the Seventh Circuit held in *Kelly*, "the date of the alleged constitutional violation . . . was the date of accrual. The date the consequences of that violation became painful . . . was not the date of accrual." 4 F.3d at 512. Thus, CBS's Section 1983 claims accrued when Ordinance 2548 was enacted on April 17, 2006.

     **B.**    **Whether the discovery rule tolls the statute of limitations on CBS's Section 1983 claim**

CBS next contends that pursuant to the discovery rule, the statute of limitations did not begin to run until it learned that it had been injured. (R. 18, Pl.'s Resp. at 2.) Thus, because the Removal Provision was not enforced—and CBS allegedly did not learn of its injury—until April 2012, CBS argues that its Section 1983 claim did not ripen until April 30, 2012, when the Village sent an enforcement letter to Red River. (*Id.* at 2-3.) Accordingly, CBS contends that its complaint is not time-barred. (*Id.*)

Under federal law, the discovery rule "starts the statute of limitations running only when the plaintiff learns that he[ has] been injured, and by whom." *United States v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010) (citing *United States v. Kubrick*, 444 U.S. 111 (1979); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990)). "This is a fact-intensive inquiry, in which both the surrounding circumstances and the claims plaintiff herself is trying to raise are critical." *Hileman*, 367 F.3d at 697. Within the complaint, CBS does not allege when it became aware of the Removal Provision, only that Ordinance 2548 was enacted without notice to CBS.[2] (*See* R. 1, Compl. ¶ 39.)

The Village, relying on *Cathedral of Joy Baptist Church v. Village of Hazel Crest*, 22 F.3d 713, 717 (7th Cir. 1994), contends that the discovery rule does not apply here because CBS fails to show that it exercised due diligence to learn of its claim. (R. 25, Def.'s Reply at 7.) The Village concedes that if its notice by publication did not satisfy due process requirements, the discovery rule would toll the running of the statute of limitations. (*Id.*) It argues, however, that its notice was sufficient and that CBS should have known about Ordinance 2548 sooner. (*Id.*) Accordingly, it contends that neither the discovery rule nor equitable tolling protect CBS's time-barred complaint. (*Id.*)

---

[2] In response to the Village's motion to dismiss, however, CBS affirmatively alleges that it did not know about the Removal Provision until April 2012. (R. 18, Pl.'s Resp. at 4.)

A plaintiff claiming that the discovery rule excepts its complaint from the relevant limitations period "has the burden of showing that it falls within the exception by demonstrating that even with the exercise of reasonable diligence it could not have known of the purported injury" in time to file a timely complaint. *Cathedral of Joy*, 22 F.3d at 717. However, "a plaintiff is not required to negate an affirmative defense, such as the statute of limitations, in his complaint." *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003) (vacating as premature the district court's dismissal of a suit as untimely when the discovery rule could potentially have saved the plaintiff's suit). The Village's reliance on *Cathedral of Joy*, a summary judgment case, is misplaced. At this stage of the litigation, "the question is only whether there is *any* set of facts that if proven would establish a defense to the statute of limitations." *Id.* at 768 (citing *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 80 (7th Cir. 1992)). CBS has sufficiently alleged facts that, if proven, may justify the invocation of the discovery rule to toll the two-year statute of limitations. Because that possibility exists, dismissing the suit as untimely would be premature. Having found that the discovery rule is a possible defense to the statute of limitations that saves CBS's Section 1983 claims from being dismissed as untimely, the Court need not address CBS's alternative defenses.

## II. Whether CBS alleges facts sufficient to sustain a First Amendment claim

The Village argues that CBS's claim that the Removal Provision of Ordinance 2548 deprives CBS of its freedom of speech should be dismissed because CBS has failed to plead sufficient facts to establish a violation of its constitutional right. (R. 14, Def.'s Mem. at 13-14.) The Village contends that the Removal Provision furthers a legitimate public interest in, *inter alia*, "aesthetics and the reduction in road traffic, goals that were validated by the U.S. Supreme Court." (*Id.* at 13) (citing *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981)). The

Village argues that incidental restrictions on expression in its attempts to further those legitimate

goals are justified because they are narrowly tailored and reasonable. (*Id.* at 13-14.) In response,

CBS contends that the Removal Provision violates *Metromedia* because the Village specifically

targeted CBS's Sign "for summary removal without a public purpose." (R. 18, Pl.'s Mem. at 12-

13.)

The First Amendment provides that "Congress shall make no law . . . abridging the

freedom of speech," U.S. Const. amend. I, and states are similarly forbidden from enacting such

laws by incorporation of the First Amendment to the states through the Fourteenth Amendment,

U.S. Const. amend. XIV. Signs are a form of expression protected by the First Amendment. *See*

*City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994). Not all expression, however, is equally

protected. For example, a government may impose stricter regulations on commercial speech

than on non-commercial speech, *see, e.g., Edenfield v. Fane*, 507 U.S. 761, 767 (1993), and

content-based regulations must meet a higher standard than content-neutral regulations, *see, e.g.,*

*Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45 (1983). To

determine whether a regulation is content-neutral or content-based, a court examines both the

text of the regulation and its application. *Members of City Council of City of L.A. v. Taxpayers*

*for Vincent*, 466 U.S. 789, 804 (1984).

Here, CBS does not allege that the Removal Provision is content-based—to the contrary,

CBS alleges that the Removal Provision targets its particular Sign, regardless of the message it

displays. (R. 18, Pl.'s Mem. at 12.) Where an ordinance is content-neutral, any restriction on

expression it imposes incidental to an attempt to further a legitimate state interest "is considered

justified as a reasonable regulation of the time, place, or manner of expression if it is narrowly

tailored to serve" that interest. *Taxpayers for Vincent*, 466 U.S. at 808; *see also Clark v. Cmty.*

*for Creative Non-Violence*, 468 U.S. 288, 293 (1984). Here, CBS concedes that "the Village has

the power to zone and regulate the use of property." (R. 1, Compl. ¶ 14.) Contrary to CBS's

argument that the Removal Provision does not further any legitimate governmental interest,

traffic safety and aesthetic concerns are widely-recognized as legitimate state interests that may

be addressed through the regulation of signs.[3] *See, e.g., Gilleo*, 512 U.S. at 48; *Taxpayers for*

*Vincent*, 466 U.S. at 805; *Metromedia*, 453 U.S. at 511-12 (plurality opinion). Thus, the

remaining inquiry is whether the Removal Provision is narrowly tailored to further those

legitimate interests.

Banning billboards has long been considered to be a reasonable regulation of expression

that is narrowly tailored to serve interests of aesthetics and traffic concerns. *See, e.g., Taxpayers*

*for Vincent*, 466 U.S. at 808 n.27 (explaining that through the plurality and the dissents "[i]n

*Metromedia*, a majority of the Court concluded that a prohibition on billboards was narrowly

tailored to the visual evil San Diego sought to correct"). Here, the Removal Provision only seeks

to effect the removal of the Sign from the Property and does not restrict expression more than is

necessary. Thus, the Court concludes that it is narrowly tailored to directly advance the

Village's legitimate interest in aesthetics and traffic safety.

---

[3] The Court is mindful of several cases in which zoning ordinances were ruled unconstitutional when they did not explicitly identify the particular interest sought to be advanced. *See, e.g., Nat'l Adver. Co. v. Town of Babylon*, 900 F.2d 551, 555 (2d Cir. 1990). Although the Removal Provision, as part of an ordinance approving a special use permit, does not explicitly state the interests it intends to further, the Court views the Removal Provision as necessarily having been enacted in the context of the Village's "coherent system of legislation" regarding signs. *See Nolan*, 514 N.E.2d at 1199. The 2006 Sign Code lists several governmental interests it is designed to advance, including "an effort to reduce visual confusion and restrict signs which increase the probability of accidents by distracting attention, obstructing vision, or otherwise affecting the public good" and "[e]nhancing the physical appearance of the village." (R. 1, Ex. 7, 2006 Sign Code § 9-91.)

Seeking to avoid that result, CBS seems to argue that the Removal Provision is *too* narrowly tailored by alleging that the Removal Provision only regulates its Sign and, accordingly, only restricts its expression. (R. 18, Pl.'s Mem. at 12.) This is an argument that is properly made in the context of an equal protection claim. It is counter-productive, however, in the context of a First Amendment claim: CBS essentially concedes that the Removal Provision is narrowly tailored and fails to argue that the Removal Provision restricts expression more than is essential to achieve the Village's interests. Because the Removal Provision is content-neutral, it is subject to the time, place, and manner restriction test. It has passed that test, and the Court therefore finds that CBS has failed to state a First Amendment claim.

## III. Whether CBS alleges facts sufficient to sustain an equal protection claim

The Village next argues that CBS has failed to allege facts sufficient to overcome the presumptive rationality and validity of Ordinance 2548 and state an equal protection claim. (R. 14, Def.'s Mem. at 14.) The Village contends that aesthetics and traffic safety are valid policy reasons for its regulation of the Sign, and that the decision to condition zoning approval on the removal of the Sign is reasonably related to those legitimate government interests. (*Id.* at 14-15.) The Village argues that CBS has failed to sufficiently allege that there was no rational basis for the alleged difference in treatment. (R. 25, Def.'s Reply at 12.)

CBS alleges disparate treatment in that the Village singled out its Sign for removal while allowing other similar signs to remain. (R. 18, Pl.'s Resp. at 13.) CBS further alleges that the enforcement of the Removal Provision is not related to a legitimate state interest or else *all* non-conforming signs would be removed, not just CBS's. (*Id.* at 14.) CBS alleges that the Village enacted the Ordinance so it would not have to compensate CBS for the removal of the Sign. (*Id.*) CBS contends that if aesthetics or traffic safety were the real justifications for the Removal

Provision, the Village has negligently allowed a "blight and safety hazard" to remain for six years after the enactment; CBS alleges that this lapse proves that "the sole justification for the Removal Provision is financial." (*Id.*)

"The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'" *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). Unless a plaintiff alleges violation of a fundamental constitutional right or discrimination against a protected class, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). The standard for analyzing "class of one" claims is in flux in the Seventh Circuit, and the full court failed to reach a majority on the issue in *Del Marcelle v. Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc). "At a minimum, however, [a plaintiff] must show that she was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Those requirements are well-established." *Billington v. Vill. of Armington*, 498 F. App'x 572, 574 (7th Cir. 2012) (citing *Thayer v. Chiczewski*, 697 F.3d 514 (7th Cir. 2012); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 563-64 (2000)) (internal citations omitted). The Seventh Circuit has urged courts to "exercise caution with class-of-one claims, because if not defined appropriately they may transform even everyday, inevitable government mistakes or oversights into constitutional violations and federal lawsuits." *Id.* (citing *Geinosky v. City of Chi.*, 675 F.3d 743, 747-48 (7th Cir. 2012)).

Here, there is no doubt that CBS was singled out for treatment, at least facially. After all, Ordinance 2548 applies only to CBS's Sign and leasehold of the Property. The Village did not,

14

however, indiscriminately single CBS out for sign removal. Instead, upon request by the property owner, the Village conditioned its grant of a special use permit upon the removal of the Sign at the termination of the Lease. Thus, a similarly situated plaintiff would be the owner or lessee of a legally non-conforming billboard and lessee of the property such a billboard was situated upon, where the property owner requested a zoning variance or special use permit and the Village granted the request *without* conditioning the variance upon removal of the billboard. CBS has failed to allege that this is the case.

Further, in Illinois, the practice of municipalities conditioning zoning variances on the removal of a billboard is neither unique to CBS's Sign nor considered a wrongful practice. *See* 65 Ill. Comp. Stat. 5/11-13-1.1 (a municipality may grant a special use permit subject to conditions); Plainfield Municipal Code § 9-37(8) ("When the special use is determined to have the potential for adverse impacts, the plan commission may recommend and the village board may impose conditions on the approval to ensure that the adverse impacts will be mitigated."); *see, e.g.*, *CBS Outdoor, Inc. v. Vill. of Itasca*, 960 N.E.2d 1212, 1218 (Ill. App. Ct. 2d Dist. 2011), *appeal denied*, 968 N.E.2d 81 (Ill. 2012) (village could condition property owner's requested zoning variance on its agreement to terminate a billboard lease and remove the billboard); *Lamar Advantage G.P. Co., L.L.C. v. Addison Park Dist.*, 820 N.E.2d 626, 635 (Ill. App. Ct. 2d Dist. 2004) (village could condition property owner's requested annexation on its agreement to terminate a billboard lease and remove the billboard); *accord Outdoor Sys., Inc. v. City of Mesa*, 997 F.2d 604, 616 (9th Cir. 1993) (city could condition permits to develop land on removal of non-conforming billboards).

If a plaintiff does not allege facts that would show disparate treatment, it has failed to allege the necessary elements of an equal protection claim. *LaBella Winnetka, Inc. v. Vill. of*

*Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010). Thus, CBS has failed to sufficiently state an equal protection claim.

**IV.      Whether CBS alleges facts sufficient to sustain a substantive due process claim**

Finally, the Village also argues that even if CBS has alleged a property interest, CBS has failed to state a substantive due process claim because it did not sufficiently allege a violation of some other constitutional right or that the available state remedies are inadequate. (R. 14, Def.'s Mem. at 15.) The Village contends that CBS's challenge to the Ordinance is properly addressed by State law remedies. (*Id.*)

To survive a motion to dismiss a substantive due process claim challenging a zoning ordinance, a plaintiff must allege facts that, if true, would show (1) "that the decision was arbitrary and irrational" and (2) "either a separate constitutional violation or the inadequacy of state law remedies." *Polenz v. Parrott*, 883 F.2d 551, 558-59 (7th Cir. 1989); *see New Burnham Prairie Homes, Inc. v. Vill. of Burnham*, 910 F.2d 1474, 1480-81 (7th Cir. 1990) (affirming dismissal where "the complaint fail[ed] either to allege the violation of another constitutional interest or to establish the inadequacy of state remedies for [an] arbitrary [zoning] action"). Here, as discussed in detail above, CBS has failed to allege facts that allow this Court to plausibly conclude that the enactment of Ordinance 2548 was arbitrary and irrational. In

16

addition, CBS has not alleged that it has attempted to remediate its claim through state law avenues, and it has failed to state a separate constitutional violation.[4]

Thus, the because the Court cannot find that CBS has alleged facts sufficient to state a substantive due process claim, a First Amendment claim, or an equal protection claim, dismissal of Count I is appropriate.

## V.  CBS's state law claim (Count II)

Ordinarily, when a district court dismisses all federal claims, it "should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). "There are, however, unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness and comity—will point to federal decision of the state-law claims on the merits." *Id.* One such "unusual case" arises when the statute of limitations may have run such that the plaintiff will be precluded from filing a separate suit in state court. *Id.*; *Wentzka v. Gellman*, 991 F.2d 423, 425 (7th Cir. 1993). This concern is invoked here because the Village contends that CBS's state law claim for declaratory judgment and injunctive relief is subject to the 90-day statute of limitations set forth in the Illinois Municipal Code, 65 Ill.

---

[4] In its complaint, CBS alleges that by enacting the Removal Provision, the Village denied CBS of substantive due process by (1) acting inconsistently with the Village's intent by enforcing the Removal Provision; (2) exceeding its police power by conditioning its annexation decision upon the zoning applicant's agreement; (3) interfering with CBS's Lease and Addendum without notice and an opportunity to be heard; (4) interfering with CBS's expectancy of a continued contractual relationship; (5) interfering with CBS's current and future agreements with its advertisers; and (6) scheming to avoid its duty to pay just compensation. (R. 1, Compl. ¶ 57.) CBS also alleges that the Due Process Clause protects its liberty to communicate commercial and non-commercial messages to the public, to maintain and enjoy its property, to conduct business, and to contract with a landlord and customers. (R. 18, Pl.'s Mem. at 15.) But these are not the type of fundamental liberties with which the Due Process Clause is concerned. *See Albright v. Oliver*, 510 U.S. 266, 272 (1994) (aside from the rights encompassed in the Bill of Rights, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity").

Comp. Stat. 5/11-13-25(a). (R. 14, Def.'s Mem. at 6.) If CBS's claim is subject to the 90-day limitations period, it may have become time-barred during the pendency of the instant action.

Section 11-13-25(a) was added to the Illinois Municipal Code by Public Act 94-1027, § 15, and it came into effect on July 14, 2006. It has since been amended, but as enacted in 2006 it stated:

> Any special use, variance, rezoning, or other amendment to a zoning ordinance adopted by the corporate authorities of any municipality . . . shall be subject to de novo judicial review as a legislative decision . . . Any action seeking the judicial review of such a decision shall be commenced not later than 90 days after the date of the decision.

65 Ill. Comp. Stat. 5/11-13-25(a) (2006). CBS contends that the Court should not apply Section 11-13-25(a) to its complaint because a retroactive application would be inequitable. (R. 18, Pl.'s Resp. at 5.) CBS alleges that Section 11-13-25(a) became effective on July 14, 2006, 88 days after the enactment of Ordinance 2548, and thus a retroactive application would have given CBS only two days to seek review of that Ordinance. (*Id.* at 5-6.) The Village argues that Section 11-13-25(a) is the appropriate statute of limitations period to apply because Illinois courts apply procedural statutes, such as statutes of limitations, retroactively. (R. 25, Def.'s Reply at 1-2.) The Village additionally contends that statutes of limitations regarding decisions of municipalities should be strictly applied. (*Id.*)

The Illinois Supreme Court has held that when the legislature enacts a limitations period where one did not previously exist, "a plaintiff whose cause of action arose before that date will be allowed a reasonable period of time in which to bring his action." *Mega v. Holy Cross Hosp.*, 490 N.E.2d 665, 667 (Ill. 1986). "Therefore, if under the new statute a reasonable time remains, the new period can be applied, without more; if a reasonable time would not remain, then one will be allowed." *Id.* In *Mega*, the legislature enacted a new four-year repose period more than four years after the events giving rise to the cause of action. The court held that the plaintiffs

18

were entitled to "a reasonable time for bringing suit," but concluded that the reasonable time to which the plaintiffs were entitled "did not extend beyond that provided by the new repose period, computed from its effective date." *Id.* Accordingly, because the plaintiffs waited more than four years after the enactment of the four-year repose period, their action was untimely. *Id.*

Similarly here, the Court does not find it appropriate to strictly apply Section 11-13-25(a) retroactively such that CBS had only two days to file its complaint. However, Section 11-13-25(a) clearly signifies the legislature's desire to encourage swift action when individuals challenge zoning ordinances and its belief that 90 days is a sufficient length of time to file a claim. The Court finds the retroactive application of Section 11-13-25(a) appropriate to CBS's claim. In light of this, a reasonable time period for CBS to have filed its suit might have been 90 days after the enactment of Section 11-13-25(a). *See Mega*, 490 N.E.2d at 667.

The Village next argues that because CBS did not file its complaint until June 4, 2012, over six years after the enactment of Ordinance 2548, its state law claim is time-barred pursuant to Section 11-13-25(a) and should be dismissed with prejudice. (R. 14, Def.'s Mem. at 6.) CBS reasserts the arguments relating to the discovery rule and equitable tolling it made with regards to its Section 1983 claim. (R. 18, Pl.'s Resp. at 5.)

Illinois courts have strictly enforced the 90-day limitation period in Section 11-13-25(a). *See, e.g., Vill. of Itasca*, 960 N.E.2d at 1216 (stating, in determining whether to apply the 90-day limitation period or Illinois's general 5-year limitation period: "The 90-day limitations period for review of these decisions is not optional. After 90 days have run, the decision of a municipality regarding a petition or application for a special use is deemed valid."). In addition, Illinois courts have generally held that limitations periods for claims against local governments are to be construed strictly. *See, e.g., Ferguson v. McKenzie*, 780 N.E.2d 660, 665 (Ill. 2001) ("Because a

19

local governmental entity must anticipate that the number of claims made against it will far exceed those brought against a private individual, the provision of an abridged limitations period is reasonable."); *Vill. of Glendale Heights v. Glen Ayre Enterprises, Inc.*, 935 N.E.2d 562, 568 (Ill. App. Ct. 2d Dist. 2010) ("The legislative preference for finality in annexation proceedings is so strong that, again unlike typical statutes of limitations, the annexation limitations statute is not tempered by any discovery rule pausing the start of the limitations period until the claimant knew of or should have discovered the cause of action.").

The common law discovery rule is widely applied in Illinois, however, except "where there is a contrary indication of legislative intent, such as a statute of repose, which places an absolute outer time limit on when an action can be brought." *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1135 (Ill. 1995) (internal citation omitted). Neither the Illinois Municipal Code and its legislative history nor the relevant case law indicate that the legislature intended the 90-day limitation period in Section 11-13-25(a) to be insulated from equitable concerns like the discovery rule. Accordingly, the Court must relinquish jurisdiction of CBS's pendent state law claim. Either the discovery rule has tolled the running of the limitation period in Section 11-13-25(a) and the state law claim is the only remaining claim, or the case raises a novel question of State law—whether the discovery rule applies to the limitation period in Section 11-13-25(a). In either case, it is appropriate for the Court to decline to exercise supplemental jurisdiction over the state law claim in Count II and dismiss it without prejudice to refiling in state court. 28 U.S.C. § 1367(c); *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007).

**VII.     CBS's request for a preliminary injunction**

Having found that CBS failed to state a claim upon which relief may be granted in this Court, its request for a preliminary injunction, (R. 1, Compl. ¶¶ 46-53), is denied as moot. To the extent CBS seeks a preliminary injunction as to its state law claim, the Court relinquishes jurisdiction to allow CBS to pursue those claims in state court.

## CONCLUSION

For the foregoing reasons, the Village's motion to dismiss (R. 12) is GRANTED. Having found that CBS's complaint failed to sufficiently allege a claim for relief under Section 1983 in Count I and declined to exercise supplemental jurisdiction over CBS's state law claim in Count II, the Court does not address the Village's many remaining arguments. CBS's complaint (R. 1) is dismissed without prejudice.

ENTERED: 

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: July 30, 2013**

21