UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CBS OUTDOOR, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VILLAGE OF PLAINFIELD, ILLINOIS, )<br>and RED RIVER PLAINFIELD, LLC, )<br>)<br>Defendants. ) | No. 12 C 4317<br><br>Chief Judge Rubén Castillo |

## MEMORANDUM OPINION AND ORDER

Plaintiff CBS Outdoor, Inc. ("CBS") brings this action against Defendants Village of Plainfield, Illinois (the "Village") and Red River Plainfield, LLC ("Red River") alleging violations of CBS's constitutional rights to due process, equal protection of the law, and freedom of speech. Presently before the Court is the Village's motion to dismiss the amended complaint for failure to state a claim upon which relief may be granted. For the reasons set forth below, the Village's motion is granted in part and denied in part.

### RELEVANT FACTS

CBS, a Delaware corporation, is in the outdoor advertising business and owns or leases property on which it maintains outdoor advertising structures. (R. 32, Am. Compl. ¶¶ 15-16.) It sells or donates its advertising space to third parties, or uses the space itself, to communicate commercial and non-commercial messages to the public. (*Id.* ¶ 16.) The Village is an Illinois municipal corporation located in Will and Kendall Counties. (*Id.* ¶ 17.) Red River is an Illinois limited liability company with its principal place of business in Naperville, Illinois. (*Id.* ¶ 18.) Masud M. Arjmand, a resident of Naperville, Illinois, is the sole member of Red River. (*Id.*)

CBS owns and maintains a billboard that is the subject of this suit (the "Sign"). (*Id.* ¶ 6.) The Sign is a single pylon that is anchored in concrete approximately 20 feet below ground. (*Id.* ¶ 24.) It has two back-to-back faces, 14 feet high and 48 feet wide, that are visible from Illinois State Route 59. (*Id.*) The top of the Sign is approximately 64 feet above the ground. (*Id.*) The Sign is located on a parcel of land (the "Property"), which is owned by Red River and leased to CBS through a written agreement (the "Lease"). (*Id.* ¶ 6; R. 1, Ex. 1, Lease.)[1] The Property is adjacent to another parcel of property (the "McDonald's Site") that is also owned by Red River. (*See* R. 32, Am. Compl. ¶¶ 8-9.) The Property and the McDonald's Site were previously part of the same parcel of land in unincorporated Will County. (*Id.* ¶ 8.) In 2006, the then-owner of the parcel of land, G&S Land Development, LLC ("G&S"), and its tenant, McDonald's USA, LLC ("McDonald's"), caused the Village to approve the subdivision of the property into two lots. (*Id.*) The Property upon which the Sign is situated is part of Lot 2; the McDonald's Site is Lot 1. (*Id.*)

Although not an original party to the Lease, CBS came to be the successor lessee of the Property and owner of the Sign through a series of transactions and mergers. (*Id.* ¶¶ 29-30.) Red River is similarly a successor lessor of the Property rather than an original party to the Lease. (*Id.* ¶¶ 31-32.) The Lease states that it commenced on August 8, 1991, and continued for

> an initial term of ten years from the first day of the first month following erection of the advertising display(s) (hereinafter called "the effective date"), and shall continue thereafter, at the option of the Lessee, for a second term of ten years, and thereafter from year to year, on the same terms, until terminated as of any subsequent anniversary of the effective date by written notice of termination given not less than sixty days prior to such anniversary date by either the Lessor or Lessee.

(R. 1, Ex. 1, Lease ¶ 3.)

---

[1] CBS's amended complaint incorporates Exhibits 1-9 to its original complaint by reference. (R. 32, Am. Compl. ¶¶ 6, 10, 20, 21, 23, 27, 39, 49, 55.)

2

In September 1991, Will County issued a building permit for the Sign. (R. 32, Am. Compl. ¶ 20; R. 1, Ex. 3, Permit.) On April 21, 1991, Illinois issued a state permit for the Sign. (R. 32, Am. Compl. ¶ 21; R. 1, Ex. 4, Permit.) Although the Lease states that it began in August 1991, CBS alleges that construction of the Sign was completed in October 1992 and the parties agreed that the initial term of the Lease began on September 1, 1992, and expired on August 31, 2002. (R. 32, Am. Compl. ¶ 22.) At that time, the lessee, CBS's predecessor in interest, exercised its option to renew the Lease for a second ten-year term, which expired on August 31, 2012. (*Id.*) On March 28, 2012, Red River and CBS executed an Addendum to the Lease (the "Addendum") that extended CBS's right to possession of the Property for a term of twenty years. (*Id.* ¶ 23; R. 1, Ex. 5, Addendum.) The Addendum was backdated to September 1, 2011, and the term of the Addendum ran through August 31, 2031. (R. 32, Am. Compl. ¶ 23; R. 1, Ex. 5, Addendum.)

On August 31, 1998, the Village annexed the parcel of land containing the Property and the McDonald's Site at the request of the owner of the parcel. (R. 32, Am. Compl. ¶ 38.) On October 18, 2004, the Village enacted Ordinance 2428 (the "2004 Sign Code"), a comprehensive regulation of signs in the Village. (*Id.* ¶ 39; R. 1, Ex. 6, Portions of 2004 Sign Code). The 2004 Sign Code was amended and recodified on August 15, 2006 as Ordinance 2578 (the "2006 Sign Code"). (R. 32, Am. Compl. ¶ 40.) As relevant here, the 2006 Sign Code states that "[b]illboards or other similar large outdoor advertising devices" are "expressly prohibited." (*Id.*) CBS alleges that the Property was zoned such that the Sign was legal when it was constructed, that it was constructed and is maintained in accordance with applicable building codes, and that it has never been cited for a code violation. (*Id.* ¶ 28.)

3

In 2005, McDonald's USA, LLC ("McDonald's") approached the Village to propose developing the McDonald's Site as a typical McDonald's restaurant with a drive-through window. (*Id.* ¶ 44.) On April 17, 2006, the Village enacted Ordinance 2548, which granted the special use permit McDonald's needed to develop its proposed restaurant at the McDonald's Site. (*Id.* ¶ 46; R. 1, Ex. 2, Ord. 2548.) Ordinance 2548 granted the permit subject to two conditions: (1) the execution of a statement of intent; and (2) "Removal of the [Sign], when the current lease expires in 2011, or sooner if possible" (the "Removal Provision"). (R. 1, Ex. 2, Ord. 2548 at § 3.) CBS alleges that the Removal Provision pertains only to Lot 2, not to the McDonald's Site, and that McDonald's and G&S agreed to the inclusion of the Removal Provision in Ordinance 2548 "only after it became clear to them that, if they did not agree, the Village would significantly delay or postpone enactment of Ord. 2548 and approval of the proposed Planned Unit Development." (R. 32, Am. Compl. ¶¶ 47-48.)

On August 3, 2006, McDonald's, G&S, and the Village fulfilled the first condition of Ordinance 2548 by signing the Planned Unit Development Commercial and Industrial Statement of Intent and Agreement (the "PUD Statement"). (*Id.* ¶ 49.) The PUD Statement provides, *inter alia*, that the Lease "shall not be renewed or extended" by the owner or any successor, and "[u]pon the expiration of the [Lease] in 2011, or upon the earlier termination of the [Lease] to the extent legally permitted," the Sign would promptly be removed. (*Id.* ¶ 51; R. 1, Ex. 8, PUD Statement ¶ 3.) CBS alleges that when Red River obtained title to the Property and the McDonald's Site in November 2007, Red River did not have actual notice or knowledge of the Removal Provision contained in Ordinance 2548. (*Id.* ¶ 32.) CBS was not notified of the enactment of Ordinance 2548 or of the signing of the PUD Statement. (R. 32, Am. Compl. ¶¶ 46, 49.)

4

On April 30, 2012, an officer of the Village wrote to Red River that the Property was in violation of Section 9-95(3) of the 2006 Sign Code and the PUD Agreement. (*Id.* ¶ 55; R. 1, Ex. 9, Apr. 30, 2012 Letter to Red River.) The letter instructed that the Sign should be removed by May 30, 2012, and that failure to remove the Sign would result in a fine of up to $750 per day and possible prosecution. (R. 32, Am. Compl. ¶ 55; R. 1, Ex. 9, Apr. 30, 2012 Letter to Red River.)

## PROCEDURAL HISTORY

On June 4, 2012, CBS filed its complaint against Red River and the Village. (R. 1, Compl.) The Village moved to dismiss CBS's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 12, Def.'s Mot. Dismiss.) The Court granted that motion, finding that CBS had failed to state a federal claim and declining to exercise jurisdiction over its state law claim. (R. 27, Mem. Op. & Order); *CBS Outdoor, Inc. v. Vill. of Plainfield, Ill.*, 959 F. Supp. 2d 1054 (N.D. Ill. 2013). On September 13, 2013, CBS filed an amended complaint. (R. 32, Am. Compl.) In Count I, CBS alleges that the 2006 Sign Code deprives CBS of its constitutional rights to free speech. (*Id.* ¶¶ 65-67.) In Count II, CBS alleges that the Removal Provision of Ordinance 2548 constitutes a deprivation of substantive due process, (*id.* ¶ 71); a deprivation of equal protection of the law, (*id.* ¶ 72); and a deprivation of CBS's freedom of speech, (*id.* ¶ 73). In Count III, CBS seeks a declaratory judgment that the Removal Provision is invalid and unenforceable under Illinois State law and a permanent injunction against its enforcement. (*Id.* ¶¶ 79-81.) CBS also seeks a preliminary injunction prohibiting enforcement *pendente lite*. (*Id.* ¶¶ 56-64).

5

On October 11, 2013, the Village moved to dismiss CBS's amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 36, Def.'s Mot.) That motion is presently before the Court.

## LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the non-movant's favor. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rule 8(a)(2) requires more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Detailed factual allegations" are not required, but the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

## ANALYSIS

As an initial matter, the Village contends that the amended complaint fails to add facts or claims to the original complaint, which the Court dismissed, and the Court should accordingly

6

dismiss Counts I and II of the amended complaint. (R. 36, Def.'s Mot. at 2.) CBS concedes that its substantive due process claim in amended Count II simply repeats the claim this Court previously dismissed. (R. 42, Pl.'s Resp. at 1.) CBS contends, however, that it added to its previously dismissed First Amendment and equal protection claims. (*Id.*) Consequently, the Court dismisses with prejudice the substantive due process claim in CBS's amended Count II for the reasons stated in its initial opinion and proceeds to consider the remaining claims.

The Village additionally argues that "[a]lthough the concluding sentence of this Court's prior ruling appears to dismiss the entire action without prejudice," the Court must have meant to dismiss all but the state law claim with prejudice. (R. 36, Def.'s Mot. at 3.) This Court aims to be transparent in its holdings and does not make a practice of intending the exact opposite of what it has said. The Court thus encourages the parties to read the concluding sentence of this Court's prior opinion—"CBS's complaint (R. 1) is dismissed without prejudice."—as it is written. It has long been the practice of courts in the Seventh Circuit to allow plaintiffs to file one amended complaint as a matter of course. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010); *Fuhrer v. Fuhrer*, 292 F.2d 140, 142 (7th Cir. 1961). The Village's contention that CBS's claims "were fully examined by this Court on their merits" is simply false; in the Court's prior opinion, the Court did not hold that CBS had no claim, only that CBS failed to sufficiently plead a claim. *See, e.g., CBS Outdoor*, 959 F. Supp. 2d at 1066 (finding that CBS failed to allege facts that would show disparate treatment). The Court declines to dismiss CBS's amended complaint out of hand and turns now to the merits.

I.  **Whether CBS alleges facts sufficient to sustain a First Amendment claim**

The Village argues that CBS's claim that the Removal Provision deprives CBS of its freedom of speech should be dismissed because the Court has already adjudicated the claim and

found it lacking. (R. 36, Def.'s Mot. at 3.) The Court previously found that the Removal Provision is undisputedly content-neutral and that it is an attempt to further the legitimate governmental interests of traffic safety and aesthetic concerns. *CBS Outdoor*, 959 F. Supp. 2d at 1064. CBS has provided no reason to reconsider that holding, and the Court declines to rehash that analysis. The amended complaint adds to CBS's initial First Amendment claim, however, and includes arguments the Court has not previously adjudicated.

In Count I of the amended complaint, CBS contends that the 2006 Sign Code is unconstitutional because it (1) restricts non-commercial speech while permitting "unfettered commercial speech;" (2) discriminates between types of commercial speech by prohibiting off-premise advertising; and (3) requires Village pre-approval for certain speech without clear standards. (R. 32, Am. Compl. ¶ 67.) The substance of the Village's two-sentence argument that the Court should dismiss Count I seems to be that CBS lacks standing to challenge the 2006 Sign Code. (R. 36, Def.'s Mot. Dismiss at 3.) Regardless of the poorly-formed nature of the Village's standing argument, "the court has an independent obligation to assure that standing exists." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

It is the plaintiff's burden to allege facts that establish standing. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) *holding modified by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004) (internal citations, alterations, and quotation marks omitted). In order to establish Article III standing, a plaintiff must demonstrate: (1) an injury in fact; (2) connection between the alleged injury in fact and the alleged conduct of the defendant; and (3) a likelihood that requested relief will remedy the alleged injury in fact. *Vt. Agency of Natural Res. v. United States*, 529 U.S. 765, 771 (2000); *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "To satisfy

8

the injury-in-fact requirement in a preenforcement action, the plaintiff must show 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and that there exists a credible threat of prosecution thereunder.'" *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 590-91 (7th Cir. 2012) *cert. denied*, 133 S. Ct. 651 (2012) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

CBS argues that it has alleged an injury "as the result of the Village's efforts to enforce the Removal Provision as an extension of the [2006 Sign] Code." (R. 42, Pl.'s Resp. at 5.) CBS alleges that in each of the years 2009, 2010, 2011, and 2012, it earned over $100,000.00 from the Sign. (*Id.* ¶ 33.) CBS alleges that it expects to continue to earn such income from the Sign, and that it will lose that income and face potential liability for breach of contracts with its advertisers if the Village is permitted to enforce the Sign Code through the Removal Provision. (*Id.* ¶¶ 34-36.) CBS would like to maintain its Sign, but the Removal Provision threatens its ability to do so.

The Removal Provision does not include language indicating that it is meant to be an extension of the 2006 Sign Code or is unable to stand alone, (*see* R. 1, Ex. 2, Ord. 2548), and neither does the 2006 Sign Code mention or incorporate future ordinances that pertain to specific signs, such as the Removal Provision, (*see* R. 1, Ex. 7, 2006 Sign Code). Nevertheless, the Court determines that the Removal Provision is a method of enforcing the 2006 Sign Code. *See CBS Outdoors*, 959 F. Supp. 2d at 1064 n.3 (determining that the Removal Provision was enacted as a part of the Village's regulatory scheme regarding signs). Chapter 9 of the Plainfield Municipal Code is a "comprehensive amendment" referred to as the Zoning Ordinance, and it includes directives about signs as well as special use permits. Plainfield Municipal Code § 9-1. The Plainfield procedure for obtaining a special use permit begins with submission of an application

9

to the zoning administrator; after several steps, if the application is successful, the result will be a municipal ordinance authorizing the special use. Plainfield Municipal Code § 9-37. CBS does not allege that Ordinance 2548 was enacted by a process other than the one outlined in Chapter 9, Section 37 of the Plainfield Municipal Code. Drawing all inferences in CBS's favor, as the Court must, and without any guidance from the Village in terms of the interpretation of its municipal code, the Court concludes that Ordinance 2548 is a part of the Zoning Ordinance for all practical purposes and was enacted to enforce the 2006 Sign Code against CBS. Because CBS has alleged an intention to maintain its Sign, an act of speech that is plausibly threatened by the 2006 Sign Code as enforced by the Removal Provision, the Court finds that CBS has alleged a sufficient injury to satisfy the preenforcement injury-in-fact standing requirements. *See Am. Civil Liberties Union*, 679 F.3d at 590-91.

The second element of standing—a connection between the alleged injury and the defendant's conduct—is easily met here: the threatened removal of CBS's Sign is a direct result of the Village's enactment of the Removal Provision. The Court thus turns its attention to the redressability of CBS's alleged injury. CBS asks the Court to permanently enjoin enforcement of the 2006 Sign Code. Having determined that the Removal Provision was enacted to enforce the 2006 Sign Code, the Court finds that CBS's alleged injury would be redressed by the requested relief. The Court accordingly concludes that CBS has alleged facts sufficient to establish standing to challenge the 2006 Sign Code. Because lack of standing is the only reason the Village provides for the Court's dismissal of Count I of the Amended Complaint, the Court has no grounds to dismiss Count I.

## II. Whether CBS alleges facts sufficient to state an equal protection claim

The Village next argues that the Court should dismiss the equal protection claim in Count II because CBS has again failed to allege facts "sufficient to overcome the presumptive rationality and validity of the challenged ordinances." (R. 36, Def.'s Mot. at 4.) "The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'" *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). To state a class-of one equal protection claim, the plaintiff must allege that it "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The Seventh Circuit has not resolved its split over whether a plaintiff alleging a class-of-one equal protection claim must establish animus or improper motive. *Knaus v. Town of Ledgeview*, No. 13-2956, 2014 WL 1378128 (7th Cir. Apr. 9, 2014) (citing *Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc)). In *Del Marcelle*, the Seventh Circuit, sitting en banc, split three ways on the issue:

> Some members of the court thought the plaintiff should be required to plead and prove that the disparate treatment was motivated by personal ill will or other illegitimate purpose; that is, a purpose unrelated to public duty. See [*Del Marcelle*, 680 F.3d at 889] (Posner, J.) (plurality opinion) (writing for four members of the court). Others expressed the view that personal animus or other improper motive is not an element of the claim but just one way to prove that the defendant's action lacked a rational basis. *See id.* at 913-14 (Wood, J., dissenting) (writing for five members of the court). One member of the court concluded that motive or intent "has no role at all" in class-of-one litigation. *See id.* at 900 (Easterbrook, C.J., concurring in the judgment).

*D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 685 (7th Cir. 2013) *cert. denied*, 134 S. Ct. 1308 (2014). "At a minimum, however, [a plaintiff] must show that she was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in

11

treatment. Those requirements are well-established." *Billington v. Vill. of Armington*, 498 F. App'x 572, 574 (7th Cir. 2012) (citing *Thayer v. Chiczewski*, 697 F.3d 514 (7th Cir. 2012); *Olech*, 528 U.S. at 563-64) (internal citations omitted). The similarly situated standard is rigorous as "the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." *Reget*, 595 F.3d at 695. Unless a plaintiff alleges violation of a fundamental constitutional right or discrimination against a protected class, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

In its previous opinion, this Court held that CBS had failed to allege the necessary elements of an equal protection claim because it had failed to allege disparate treatment. *CBS Outdoor*, 959 F. Supp. 2d at 1066. It instructed that in order to make out a class-of-one equal protection claim, CBS would need to allege that the owner of property upon which a legally non-conforming billboard was situated requested a zoning variance or special use permit and the Village granted the request *without* conditioning the variance upon removal of the billboard. *Id.* In its amended complaint, CBS alleges that the Village denies CBS equal protection of laws by enacting and threatening enforcement of the Removal Provision but allowing other legal non-conformities to remain without the threat of removal. (R. 32, Am. Compl. ¶ 72(b)-(c).) Specifically, CBS alleges that Lamar Advertising maintains an off-premise billboard that is a legal non-conformity and is similar to the Sign. (*Id.* ¶ 72(d)(i).) Since Lamar's sign was constructed: (1) the property on which it is situated was sold, (2) a tenant in one of the rental units vacated, (3) a new tenant moved in and opened a new business, and (4) a vacancy has existed for more than 30 days. (*Id.* ¶ 72(d)(vi).) CBS alleges that Lamar's sign has not been

treatment. Those requirements are well-established." *Billington v. Vill. of Armington*, 498 F. App'x 572, 574 (7th Cir. 2012) (citing *Thayer v. Chiczewski*, 697 F.3d 514 (7th Cir. 2012); *Olech*, 528 U.S. at 563-64) (internal citations omitted). The similarly situated standard is rigorous as "the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." *Reget*, 595 F.3d at 695. Unless a plaintiff alleges violation of a fundamental constitutional right or discrimination against a protected class, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

In its previous opinion, this Court held that CBS had failed to allege the necessary elements of an equal protection claim because it had failed to allege disparate treatment. *CBS Outdoor*, 959 F. Supp. 2d at 1066. It instructed that in order to make out a class-of-one equal protection claim, CBS would need to allege that the owner of property upon which a legally non-conforming billboard was situated requested a zoning variance or special use permit and the Village granted the request *without* conditioning the variance upon removal of the billboard. *Id.* In its amended complaint, CBS alleges that the Village denies CBS equal protection of laws by enacting and threatening enforcement of the Removal Provision but allowing other legal non-conformities to remain without the threat of removal. (R. 32, Am. Compl. ¶ 72(b)-(c).) Specifically, CBS alleges that Lamar Advertising maintains an off-premise billboard that is a legal non-conformity and is similar to the Sign. (*Id.* ¶ 72(d)(i).) Since Lamar's sign was constructed: (1) the property on which it is situated was sold, (2) a tenant in one of the rental units vacated, (3) a new tenant moved in and opened a new business, and (4) a vacancy has existed for more than 30 days. (*Id.* ¶ 72(d)(vi).) CBS alleges that Lamar's sign has not been

taken down and, on information and belief, that the Village has taken no action to remove it. (*Id.* ¶ 72(e).) CBS alleges that each of the four events listed above are grounds for removal of the sign pursuant to the 2006 Sign Code. (*Id.* ¶ 72(f).) CBS contends that the Village's failure to enforce the 2006 Sign Code to require the removal of Lamar's sign while demanding the removal of CBS's Sign constitutes disparate treatment that is not rationally related to a legitimate governmental interest. (*Id.* ¶ 72(g).)

The Village argues that Lamar's sign is not an appropriate comparator to CBS's Sign because Lamar's sign "has not been alleged to have been the subject of a zoning ordinance in any way similar to Ordinance 2548." (R. 43, Def.'s Reply at 3.) "[P]laintiffs carry a high burden in establishing someone who is similarly-situated in class-of-one cases, and that 'similarly situated individuals must be very similar indeed.'" *Billington*, 498 F. App'x at 575 (internal citation omitted) (quoting *McDonald v. Village of Winnetka*, 371 F.3d 992, 1002-03 (7th Cir. 2004)). Here, CBS has failed to allege facts that would satisfy that burden. Lamar Advertising is not similarly situated to CBS because a business license is not the same as a request for a zoning variance or a special use. The decision to issue the business license is made by the Village president based on recommendations from the chief of police, Plainfield Municipal Code § 4-424(b), while the decision to issue a special use permit is made by the Village board on recommendations from the plan commission or zoning board of appeals after a public hearing, Plainfield Municipal Code § 9-27, 9-37.[2] The standards for granting a business license are dissimilar from the standards for granting a special use permit, and "[w]hen the special use is determined to have the potential for adverse impacts, the plan commission may recommend and the village board may impose conditions on the approval to ensure that the

---

[2] The Court takes judicial notice of municipal ordinances pursuant to Federal Rule of Evidence 201(b)(2). *See Demos v. City of Ind'polis*, 302 F.3d 698, 706 (7th Cir. 2002).

13

adverse impacts will be mitigated." Plainfield Municipal Code § 9-37(8). There is no similar provision allowing for unique conditions to be imposed on business licenses.

The Court specifically instructed CBS that to state an equal protection claim, it must identify a situation "where the property owner requested a *zoning variance or special use permit* and the Village granted the request *without* conditioning the variance upon removal of the billboard." *CBS Outdoor*, 959 F. Supp. 2d at 1066 (first emphasis added). Instead, CBS has identified a situation where a co-tenant of the property requested a business license—a different process to reach a decision governed by different standards and made by a different entity. CBS has once again failed to allege a similarly situated party.

Even if Lamar Advertising were similarly situated to CBS, identifying a similarly situated party is only half the battle in a class-of-one equal protection claim. CBS must also allege facts that establish that there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 946 (7th Cir. 2009) (quoting *City of Chicago v. Shalala*, 189 F.3d 598, 605 (7th Cir. 1999)). The Village argues that the 2006 Sign Code should not be conflated with the Removal Provision, but that it is nonetheless not a violation of the Equal Protection clause to fail to enforce an ordinance to the fullest extent possible. (R. 43, Def.'s Reply at 3-4.) "To get past a Rule 12(b)(6) motion to dismiss on a class of one equal protection claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Kopp*, 725 F.3d at 686 (internal quotation marks omitted) (quoting *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008)). "[T]he test for rationality does not ask whether the benign justification was the *actual* justification. All it takes to defeat the plaintiffs' claim is a *conceivable* rational basis for the difference in treatment." *Id.* Thus, the plaintiff bears a heavy

burden because any hypothetical rational basis dooms a plaintiff's equal protection claim. *Id.* at 686-87 (citing *Heller v. Doe*, 509 U.S. 312, 320 (1993); *Srail*, 588 F.3d at 946-47).

Here, the Court is able to hypothesize several rational bases for the Village's conditioning Ordinance 2548 upon the Removal of the Sign while granting the business license without requiring the removal of Lamar's Sign, many of which are suggested by allegations in the complaint establishing that CBS's Sign is significantly larger than Lamar's Sign. CBS's Sign thus may have caused accidents or traffic problems; it may be the subject of resident complaints; it may be on a more heavily traveled road so that it poses more of a threat to the Village's esthetic preferences. "A perplexing situation arises when a lawsuit challenging a government action subject only to rational basis review is evaluated under the deferential standard of a Rule 12(b)(6) motion to dismiss. A class-of-one plaintiff must anticipate this dilemma." *Id.* at 686 (internal alterations, citations, and quotation marks omitted) (quoting *Flying J*, 549 F.3d at 546) (finding that "allegations in the complaint suggest[ed] a rational basis" for the disparate treatment and thus the complaint failed to state a class-of-one equal protection claim).

CBS's claim is essentially selective prosecution: CBS contends that the Village enforced the 2006 Sign Code against its Sign through the enactment of the Removal Provision but did not enact a similar ordinance to enforce the 2006 Sign Code against Lamar's sign. The Seventh Circuit has held that selective prosecution comes in two forms:

> The first is simply failing to prosecute all known lawbreakers, whether because of ineptitude or (more commonly) because of lack of adequate resources. The resulting pattern of nonenforcement may be random, or an effort may be made to get the most bang for the prosecutorial buck by concentrating on the most newsworthy lawbreakers, but in either case the result is that people who are equally guilty of crimes or other violations receive unequal treatment, with some being punished and others getting off scot-free. That form of selective prosecution, although it involves dramatically unequal legal treatment, has no standing in equal protection law. The second form of selective prosecution, and the only one that is actionable under the federal Constitution, is where the

15

> decision to prosecute is made either in retaliation for the exercise of a constitutional right, such as the right to free speech or to the free exercise of religion, or because of membership in a vulnerable group.

*Esmail v. Macrane*, 53 F.3d 176, 178-79 (7th Cir. 1995) (internal citations omitted) (citing *Wayte v. United States*, 470 U.S. 598, 607-08 (1985); *United States v. Smith*, 953 F.2d 1060, 1063 (7th Cir. 1992)). CBS fails to allege that the distinction made between it and Lamar is retaliatory or inappropriately motivated in any way. CBS's equal protection claim is the type of class-of-one claim the Seventh Circuit described as having "no standing in equal protection law." *Id.* While CBS may not be required to allege an improper motive, it must allege facts that would allow the Court to infer that there is no rational basis for the disparate treatment. *See Kopp*, 725 F.3d at 685. CBS's conclusory allegation that "there is no justification for the Village to surreptitiously and indirectly cause the removal of [the Sign] and allow a similar legal non-conformity to continue" is not sufficient to overcome the presumption of rationality. The Court thus finds that CBS has failed to sufficiently allege a class-of-one equal protection claim.

### III. CBS's state law claim (Count III)

In Count III, CBS seeks a Declaratory Judgment that the Removal Provision is invalid under State law. (R. 32, Am. Compl. ¶¶ 77-81.) The Village argues that the Court should decline to exercise supplemental jurisdiction over CBS's state law claim and should dismiss Count III. (R. 36, Def.'s Mot. at 4.) Because the Court has found no reason to dismiss CBS's First Amendment claim, however, the Court's exercise of supplemental jurisdiction over CBS's State law claim is proper. 28 U.S.C. § 1367(a). The Court declines to dismiss Count III.

## CONCLUSION

For the foregoing reasons, the Village's motion to dismiss (R. 36) is GRANTED as to CBS's equal protection and substantive due process claims in Count II and DENIED as to CBS's First Amendment and Declaratory Judgment claims in Counts I and III. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear for a status hearing on May 13, 2014 at 9:45 a.m.

ENTERED:
Chief Judge Rubén Castillo
United States District Court

Dated: April 25, 2014